

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
APR -1 2016
ARTHUR JOHNSTON
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**ROBERT M. BARTON**                                                                 **PLAINTIFF**

vs.                                                          CIVIL ACTION NO. 3:16-cv-235 HTW-LRA

**FRANCHISE SERVICES OF NORTH AMERICA, INC.**
**U-SAVE AUTO RENTAL OF AMERICA, INC.,**
**U-SAVE HOLDINGS, INC., AND**
**THOMAS P. MCDONNELL, III**                                                        **DEFENDANTS**

## COMPLAINT

COMES NOW, Plaintiff Robert M. Barton, and in support of his complaint against Defendants, Franchise Services of North America, Inc. ("FSNA"), U-Save Auto Rental of America, Inc., ("U-Save") U-Save Holdings, Inc. ("USHI") and Thomas P. McDonnell, III ("McDonnell"), states as follows:

## THE PARTIES

1. Plaintiff Robert M. Barton is an adult resident citizen of the state of Florida.

2. Defendant FSNA is a Delaware corporation with a principal place of business in Ridgeland, Mississippi.

3. Defendant U-Save is a Mississippi corporation with a principal place of business in Ridgeland, Mississippi.

4. Defendant USHI is a Mississippi corporation with a principal place of business in Ridgeland, Mississippi.

5. Defendant McDonnell is an adult resident citizen of the state of Mississippi.

## VENUE AND JURISDICTION

6. Venue is proper in this Court under 28 U.S.C. §1391(b) as the Defendants reside

in this district.

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00. Additionally, this Court is authorized to grant declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§2201-02, implemented through Rule 57 of the Federal Rules of Civil Procedure. Additionally, pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over this subject matter, as it so related to the action of *U-Save Auto Rental of America, Inc. v. Robert M. Barton,* No. 3:15-CV-348-DPJ-FKB that it forms part of the same case or controversy.

## FACTS

8. FSNA is an intended shell corporation. FSNA has no employees and no sources of income. FSNA's only asset is the stock of USHI. FSNA's president and CEO is Thomas P. McDonnell, III.

9. USHI is an intended shell corporation. USHI has no employees and no sources of income, and it has no legitimate corporate existence or purpose. USHI's only function is to hold the stock of U-Save. USHI conducts no business. USHI does not conduct regular board meetings. USHI's only asset is the stock of U-Save. USHI's president, CEO, and sole director is Thomas P. McDonnell, III.

10. All of the payroll for FSNA and USHI directors and officers is paid by U-Save. All FSNA and U-Save expense reports and payables are also run through U-Save. All of the health benefits for any FSNA and USHI executives and directors derive from one U-Save program that services the entire U-Save corporate family. All of FSNA's and USHI's expenses are paid by U-Save.

11. McDonnell serves as the CEO of all Defendants named herein.

12. According to FSNA's October 2015 publicly filed financial disclosures, U-Save purports to be indebted to FSNA by virtue of an unsecured obligation.

13. FSNA and USHI do not pay for their own legal counsel. U-Save pays legal fees for FSNA, USHI and upon information and belief, McDonnell.

14. For several years, U-Save has not had regularly scheduled board of director meetings. It has no regularly scheduled shareholder meetings. All significant U-Save corporate decisions are made unilaterally by McDonnell.

15. FSNA, USHI and U-Save have failed to maintain complete corporate and financial records, and pursuant to McDonnell's instruction and leadership, have not prepared financial statements for several months prior to this filing. FSNA has yet to file its September 30, 2015 financials, which were due January 31, 2016.

### A. Barton's Termination

16. Barton is the former President and Chief Operating Officer of Defendants FSNA and U-Save.

17. Barton and U-Save entered into an Executive Employment Agreement ("Employment Agreement") effective October 1, 2005.

18. Barton's Agreement contained a mandatory arbitration provision as well as provisions pertaining to the termination of the relationship for "Cause," for "Good Reason" and "without Cause."

19. Barton is largely credited for engineering multiple corporate transactions that ultimately resulted in U-Save becoming the 4th largest car rental company in the world. Notwithstanding Barton's value, McDonnell found Barton's personality to be inconsistent with

3

his own. In email correspondence, McDonnell acknowledges the company's need to maintain Barton through certain corporate transactions. McDonnell intended to fire Barton thereafter.

20. On August 12, 2013, McDonnell informed Barton that his employment at FSNA and U-Save and his Employment Agreement were terminated. According to FSNA's articles of incorporation, officers of the company cannot be hired or fired without FSNA Board approval. However, Barton was fired by the unilateral action of McDonnell and without FSNA Board approval.

21. Barton reminded McDonnell that, pursuant to his Employment Agreement, U-Save owed him substantial sums in severance payments and benefits, and that Barton had unexercised stock options and that Barton would need to be paid the value of those.

22. Barton and McDonnell entered into negotiations concerning the terms of his separation. In an August 22, 2013 email, U-Save's counsel confirmed that the terms of Barton's separation had been confirmed. McDonnell informed third parties that the separation was amicable.

23. Thereafter, U-Save prepared a proposed written "Separation Agreement" that significantly reduced the amount of compensation agreed upon, and which required the surrender of Barton's stock options for no consideration, and which included onerous obligations not previously agreed (including a non-compete agreement), and specified a termination date "regardless of whether you sign this [Separation] Agreement." Because the stated terms were not even remotely close to those agreed upon between Barton and McDonnell, Barton refused to sign the Separation Agreement.

24. In November of 2013, McDonnell then authored a "termination for cause" letter, pursuant to which McDonnell intended to completely deprive Barton of any compensation due

him under his Employment Agreement. In the letter, McDonnell identified, "as cause," events that had taken place several years before Defendants had promoted Barton to President and Chief Operating Officer. As would later be determined by an arbitrator and confirmed by a United States District Court judge, McDonnell's letter was contrived.

25. On March 28, 2014, Barton filed an arbitration demand asserting that U-Save terminated his employment "without cause" and that he was entitled to severance payments and benefits as provided by the Agreement. A full evidentiary arbitration hearing was conducted on February 2-3, 2015.

### B. McDonnell's History of Creating False Loan Documents for Personal Benefit

26. In early 2015, McDonnell went to trial in this Court on a contract dispute with his former U-Save and FSNA Co-CEO, Sanford Miller. McDonnell asserted that Miller owed him over one million dollars in principal and interest due to a loan transaction pursuant to which McDonnell had transferred shares of U-Save stock to Miller. McDonnell was in possession of a promissory note signed by Miller, which McDonnell claimed was evidence of the debt.

27. Miller's primary defense was that the promissory note was not a genuine obligation, but rather a document manufactured by McDonnell to falsely support a non-existent receivable that McDonnell and Miller had agreed would never be repaid. At trial, Miller demonstrated that the creation of false debt instruments was a pattern and practice of McDonnell's, and that the note was not a true obligation. On March 31, 2015, this Court handed down a Judgment in favor of Miller. As a result, McDonnell recovered nothing in the case.

28. Based largely on Barton's testimony, the Court made the following findings of fact:

a) "U-Save's financial statements were false at the time Miller acquired his initial shares, . . ."

b) "McDonnell had – to say the least – an unorthodox way of conducting business. The record shows his willingness to record actual payments to other individuals as loans."

c) "According to Barton . . . this was not the first time that McDonnell disguised a debt as an asset by 'papering up' a transaction with a loan for the purpose of inflating his personal and corporate net worth."

d) "The Court finds that McDonnell . . . disguise[ed] his payment to Miller in the form of a promissory note in order to boost returns on personal and corporate financial statements."

e) "Given that McDonnell had a record of conducting business by 'papering' up loans and the fact that Miller and Barton (two high ranking officers in the company) both testified that the promissory note was never to be paid, the Court does not accept McDonnell's version of the facts."

29. McDonnell was thus found to have provided unbelievable sworn testimony in efforts to validate a series of "false," "papered-up" and "disguised" company-related debt instruments.

30. The findings and conclusions of this Court in the McDonnell v. Miller matter were personally embarrassing to McDonnell. As the decision in that case hinged significantly on Barton's testimony, McDonnell harbors personal resentment, and his efforts to deprive Barton of recovery are also motivated by vengeance.

### C. McDonnell's Attempts to Deprive Barton of the Value of His Arbitration Award and Federal Judgment

31. Barton's arbitration award was handed down on May 6, 2015.

32. Determining that U-Save breached its Agreement with Barton for failing to pay severance benefits, the arbitrator awarded Barton $596,654.44 plus prejudgment interest and post-judgment interest at 8% per annum.

33. U-Save refused to pay the Award. On May 8, 2015, U-Save filed a Complaint in

this Court to vacate the arbitration award under Section 10 of the FAA, asserting that the Arbitrator had "no power" to award in Barton's favor. *See* Docket in *U-Save Auto Rental of America, Inc. v. Robert M. Barton,* No. 3:15-CV-348-DPJ-FKB.

34. In an October 28, 2015 public filing, FSNA and U-Save announced that they had no intention of paying the award to Barton, regardless of the outcome of its motion to vacate.

35. On February 12, 2016, this Court entered a Memorandum Opinion and Order Confirming the Award. Consistent with the Arbitrator's award, Judgment in the amount of $596,654 plus 8% pre-judgment interest and 8% post-judgment interest was entered by this Court.

36. Following entry of judgment, U-Save did not pay.

37. Barton began execution proceedings against U-Save, including the issuance of writs of garnishment and judgment debtor discovery.

38. On Friday, March 18, 2016, depositions of U-Save's and FSNA's CEO and CFO were taken. Though he is U-Save's designated President, CEO, and sole director, McDonnell testified that he did not know

   a) whether U-Save is a Mississippi Corporation;
   b) the approximate amount of monthly royalty income received by U-Save from its franchises;
   c) how many bank accounts U-Save has;
   d) how many banks U-Save has accounts with;
   e) whether he receives his own salary from a U-Save bank account;
   f) whether U-Save pays FSNA's rent;
   g) whether the furniture and equipment used by FSNA is actually U-Save property;

7

    h) when U-Save last prepared financial statements;

    i) when he last made an annual payment of $150,000.00 to U-Save on a $1.25 million personal obligation; or

    j) whether he makes that payment directly to U-Save or FSNA.

39. During his deposition, McDonnell confirmed that he personally owes U-Save $1.25 million dollars evidenced by an unsecured note. However, U-Save's CFO testified that the obligation is owed to USHI. In any event, U-Save's CFO confirmed that Mr. McDonnell makes annual payments on that note directly to U-Save, which uses the proceeds for its general operating expenses.

40. Though U-Save has been subpoenaed to produce the note and related financial statements and business documents, it has refused to disclose them.

41. Two days before his deposition, McDonnell caused U-Save to encumber substantially all of U-Save's assets and FSNA to record a UCC-1 financing statement, intending to establish a priority lien in favor of FSNA for (among other assets and receivables) the remaining stream of payments to be made by McDonnell to U-Save. *See* March 16, 2016, UCC-1 filing, attached hereto as Exhibit A (hereafter referred to as "the Transfer").

42. McDonnell intends to take whatever actions are necessary to ensure that Barton never recovers a dime of his judgment. Based on admissions from his counsel, McDonnell's intention in filing the UCC-1 financing statement is to bankrupt the company and have the UCC lien take priority over the judgment, so that Barton will never be paid.

43. Upon information and belief, McDonnell did not obtain FSNA or U-Save board approval before entering into the transactions resulting in the March 16, 2016 UCC filing.

44. Following the deposition on March 16, 2016, counsel for McDonnell and FSNA

8

admitted the following:

    a)      McDonnell has decided to put U-Save and FSNA into bankruptcy.

    b)      McDonnell intends to initiate bankruptcy through which McDonnell will attempt to personally buy back assets in a liquidation sale.

    c)      Defendants had recently taken action to ensure that Barton would never be able to satisfy his judgment.

    d)      Defendants had perfected a lien which, coupled with Barton's failure to enroll his judgment, would result in Barton being "screwed."

    e)      McDonnell considered the matter with Barton to be "personal" based partly on McDonnell's understanding that Barton was "shooting his mouth off" that he was going to bankrupt U-Save.

    f)      Defendants were confident that Barton would recover nothing based on a belief that Defendants had won a "race" by recording the UCC lien before Barton had enrolled the judgment; and

    g)      Defendants had made inquiries with the clerk's office to confirm that the judgment had not been enrolled before filing the UCC statement.

### COUNT I - DECLARATORY AND INJUNCTIVE RELIEF UNDER THE UNIFORM FRAUDULENT TRANSFER ACT

45.     Plaintiff incorporates all preceding paragraphs.

46.     Under the Mississippi Uniform Fraudulent Transfer Act, Miss. Code Ann. § 15-3-101 et seq., a transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay or defraud any creditor of the debtor.

47.     A transfer made or obligation incurred by a debtor may also be fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the

9

debtor became insolvent as a result of the transfer or obligation.

48. Defendants caused the Transfer with actual intent to hinder delay or defraud Barton.

49. FSNA is a U-Save affiliate, and therefore an "insider," for purposes of the Act.

50. Before the transfer was made, U-Save had been sued or threatened with suit, and had incurred a judgment debt.

51. The transfer was intended as a lien on most or all of U-Save's assets, and was intended to prevent Barton from obtaining any of those assets.

52. U-Save received no contemporaneous consideration for the transfer.

53. U-Save is, or believes that it is, insolvent and that the indebtedness to Barton resulted in its insolvency.

54. The transfer occurred shortly after a substantial debt was reduced to judgment.

55. U-Save transferred the essential assets of the business to a lienor who is an insider of the debt.

56. U-Save made the transfer or incurred the obligation without receiving reasonably equivalent value in exchange for the transfer or obligation.

57. U-Save's transfer was for antecedent debt.

58. Defendants caused the transfer in bad faith, and in complicity with one another.

59. The transfer was in clear violation of the Uniform Fraudulent Transfer Act, entitling Barton to the relief requested below, including immediate injunctive relief preventing enforcement of the UCC security interest or any other prejudicial action premised on the existence of this purported security interest.

## COUNT II -- ALTER EGO LIABILITY OF THOMAS P. MCDONNELL, III

60. Plaintiff incorporates all preceding paragraphs.

10

61. McDonnell is the decision-maker behind U-Save's activities. He is the sole CEO, President and Chairman of the Board of a company that has no other board members. He has made all decisions in connection with Barton's claim for benefits due under Barton's Executive Employment Agreement, including all decisions relating to his and U-Save's efforts to prevent Barton from recovering and to otherwise "screw" him.

62. McDonnell has failed to observe corporate formalities in depriving Barton of his rights and in attempting to hinder, obstruct, delay and defraud Barton from recovering against U-Save. Without conducting board meetings, executing resolutions, or otherwise obtaining U-Save official corporate authority, McDonnell took a series of actions intended to "screw" Barton, including but not limited to, terminating Barton, creating false "cause" for termination and now, using FSNA and U-Save to enter into a purported secured transaction for the stated purpose of preventing Barton from satisfying his judgment and from recovering the proceeds of a personal obligation owed by McDonnell to U-Save.

63. McDonnell is the single largest individual owner of FSNA stock, and so satisfaction of the Barton Judgment devalues McDonnell's personal wealth. Further, it is McDonnell's intention to have his personal obligation extinguished and satisfied in favor of FSNA and its shareholders (himself), and to the exclusion of Barton. McDonnell's actions as described herein have been taken in efforts to protect his personal financial position.

64. McDonnell has also caused U-Save to conduct his personal business, including but not limited to, having U-Save pay his personal attorney fees, and to prevent Barton from recovering funds owed by McDonnell on a personal obligation.

65. McDonnell and U-Save share a unity of interest with respect to all matters relating to the Barton dispute, Barton's attempt at recovery, and U-Save's attempts to avoid

payment. McDonnell has at all times used U-Save as his mere instrumentality to deprive Barton of recovery and the satisfaction of his judgment.

66. McDonnell's actions were designed with the intention of preventing Barton from recovering a judicially confirmed judgment in his favor. Were McDonnell allowed to accomplish this fraudulent and improper activity, inequity would result and fraud would be rewarded.

67. For these and other reasons, McDonnell should be deemed the alter ego of U-Save, such that he be held jointly, severally and personally liable for the full amount of the judgment entered in Barton's favor.

### COUNT III – PIERCING U-SAVE'S CORPORATE VEIL / ALTER-EGO LIABILITY OF USHI

68. Plaintiff incorporates all preceding paragraphs.

69. USHI is a sham corporation. It has no actual business. To the extent USHI is the record payee of McDonnell's personal loan obligation, USHI has disregarded and rejected its status as such, and has effected a de facto assignment or transfer of interest to U-Save, to whom McDonnell believes his debt is owed, all payments are made under the note, and who uses the proceeds of such payments to conduct U-Save operations.

70. The corporate veil of U-Save should be pierced so as to obligate USHI, jointly and severally, to satisfy the Barton judgment and to declare the proceeds of the McDonnell note as a proper asset of U-Save, which may be executed upon in satisfaction of the Barton judgment.

### COUNT IV- CONSPIRACY

71. Plaintiff incorporates all preceding paragraphs.

72. Each of the Defendants entered into, and committed acts in furtherance of, an

agreement for the unlawful purpose of fraudulent transfer in order to hinder, delay and obstruct Barton's rights to payment, causing damages.

### COUNT V - BREACH OF FIDUCIARY DUTY

73. Plaintiff incorporates all preceding paragraphs.

74. As a Director of FSNA, McDonnell has a fiduciary duty to Barton, a FSNA shareholder. In taking the actions described above, McDonnell breached that duty and should be held liable for any damages caused thereby.

75. WHEREFORE, Barton demands a judgment against FSNA, U-Save and McDonnell for the following relief:

    a)    Avoidance of the Transfer;

    b)    An attachment or other provisional remedy against U-Save's and FSNA's assets;

    c)    An injunction against further disposition by U-Save and FSNA, of any funds or property related to the security interest purportedly granted by U-Save to FSNA, the proceeds of any loan property subject thereto, or the underlying obligation;

    d)    An injunction against any further disposition or use of any proceeds of loans payable to U-Save or USHI, including but not limited to any interest or principal payments made by McDonnell.

    e)    Appointment of a receiver to take charge of FSNA's property;

    f)    Levy of execution on the security interest, the underlying receivables, and any stream of income arising out of the underlying debt;

    g)    A money judgment against McDonnell for the full amount of Barton's judgment against U-Save;

    h)    Declaratory Judgment that McDonnell is jointly, severally and personally liable and obligated for the full amount of Barton's judgment against U-Save;

    i)    Declaratory Judgment that McDonnell is the alter ego of U-Save for purposes of the Barton judgment;

    k)    Declaratory Judgment that USHI is the alter ego of U-Save for purposes of the personal obligation owed to U-Save / USHI;

l)  Issuance of all necessary writs of execution, pursuant to Miss. Code Ann. §13-3-111 et seq., including but not limited to, all notes payable by McDonnell to U-Save or USHI;

m)  Attachments and Execution on all notes payable to U-Save or USHI, including but not limited to, all notes payable by McDonnell;

n)  Punitive damages pursuant to Miss. Code Ann. § 11-1-63; and

o)  Attorneys fees, costs, pre-judgment interest and post-judgment interest.

RESPECTFULLY SUBMITTED, this the 1st day of April 2016.

By: _____
O. Stephen Montagnet, III (MS Bar #10049)
W. Thomas McCraney, III (MS Bar #10171)
Douglas C. Noble (MS Bar # 10526)

*ATTORNEYS FOR ROBERT M. BARTON*

OF COUNSEL:

O. Stephen Montagnet, III (MS Bar #10049)
W. Thomas McCraney, III (MS Bar#10171)
Douglas C. Noble (MS Bar # 10526)
MCCRANEY MONTAGNET QUIN & NOBLE, PLLC
602 Steed Road, Suite 200
Ridgeland, MS 39157
Telephone:   (601) 707-5725
Facsimile:   (601) 510-2939
smontagnet@mmqnlaw.com
tmccraney@mmqnlaw.com
dnoble@mmqnlaw.com